

**IT IS ORDERED as set forth below:**

**Date: September 28, 2018**

_____
**Lisa Ritchey Craig**
**U.S. Bankruptcy Court Judge**

_____

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **IN THE MATTER OF**: | : | **CASE NUMBERS** |
| | : | |
| GREGORY DANIELS, | : | **BANKRUPTCY CASE** |
| | : | 09-65367-LRC |
| Debtor. | : | |
| _____ | : | |
| | : | |
| GREGORY DANIELS, | : | ADVERSARY PROCEEDING |
| | : | NO. 15-5296 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| HOWE LAW FIRM, P.C., | : | IN PROCEEDINGS UNDER |
| | : | CHAPTER 7 OF THE |
| Defendant. | : | BANKRUPTCY CODE |

## <u>ORDER</u>

Before the Court is the *Motion for Partial Summary Judgment* (the "Motion") (Doc.

No. 69), filed in the above-captioned adversary proceeding by Gregory Daniels ("Plaintiff"). Howe Law Firm, P.C. ("Defendant") opposes the Motion. This matter arises in connection with Plaintiff's suit against Defendant seeking damages for violations of the discharge injunction, violations of the Fair Debt Collection Practices Act (the "FDCPA"), and for negligence.[1]

### FACTS AND PROCEDURAL HISTORY

On March 2, 2009 (the "Petition Date"), Plaintiff filed a voluntary petition under Chapter 7 of the Bankruptcy Code. *See* Case Number 09-65367-LRC, Dkt. No. 1. On June 11, 2009, the Chapter 7 trustee assigned to Plaintiff's case filed a report indicating that there was no property available for distribution to creditors, and no claims bar date was ever established. *Id.* The deadline for filing a complaint objecting to Plaintiff's discharge or for a determination of the dischargeability of a particular debt was June 12, 2009. *Id.* Dkt. No. 2; Fed. R. Bankr. P. 4004, 4007. The Court entered a discharge order and closed the bankruptcy estate on June 17, 2009 (the "Discharge Order"). *Id.* Dkt. No. 16, Complaint, Ex. A.

---

[1] Plaintiff's claim for sanctions for violations of the discharge injunction arises under the Bankruptcy Code and, therefore, is a core proceeding, over which this Court has subject matter jurisdiction. *See* 28 U.S.C. §§ 157(b)(2)(A); 1334. It is not clear to the Court that it has subject matter jurisdiction over the other claims for relief—violations of the FDCPA and negligence. These claims do not arise under the Bankruptcy Code and, as Plaintiff's case was a "no-asset" Chapter 7 case, it is clear that the FDCPA and negligence claims are not related to Plaintiff's bankruptcy case. 28 U.S.C. § 1334(b). *See In re Mogg*, 2007 WL 2608501, at *3 (Bankr. S.D. Ill. Sept. 5, 2007) ("[T]he claim under the FDCPA does not fall within those matters referred or referable to the Bankruptcy Court."); *In re Csondor*, 309 B.R. 124, 130 (Bankr. E.D. Pa. 2004) (bankruptcy court lacked subject matter jurisdiction to hear the claims under FDCPA and state law claims).

On April 14, 2011, Plaintiff filed an emergency motion for sanctions and violation of the discharge injunction in Plaintiff's bankruptcy case (the "Emergency Sanctions Motion").  *See* Case Number 09-65367-LRC, Dkt. No. 21.   In the Emergency Sanctions Motion, Plaintiff asserted that, on June 29, 2010, Kim Anderson ("Anderson") had filed a civil action in the Superior Court of Fulton County ("Superior Court") against Plaintiff, seeking damages related to the prepetition sale of real property.   Plaintiff sought a determination from this Court that the debt asserted by Anderson in the state court suit had been discharged.   On August 17, 2011, this Court abstained from granting the relief requested in the Emergency Sanctions Motion on the basis that: (1) the Superior Court had concurrent jurisdiction to determine whether the debt at issue was discharged; and (2) a suit was already pending before the Superior Court in which such a determination could be made.

Thereafter, Plaintiff moved the Superior Court to enforce the discharge injunction by finding that the debt was discharged.   The Superior Court denied Plaintiff's motion, stating:

> [T]o the extent that it can be established that Plaintiff's breach of warranty claim rests upon false pretenses, false representations, or fraud, such a claim would be excepted from discharge.   Indeed, at this time, and without addressing the merits of Plaintiff's breach of warranty claim, it appears that the breach of warranty claim is excepted from the discharge.   Therefore, the instant motion is DENIED.   However, based upon further development of the record, the Court may revisit this issue

3

at a later date.

Complaint Exh. C.   Anderson voluntarily dismissed the action without prejudice before the Superior Court could revisit the issue.   Complaint, ¶ 16.

In November 2013, Network Commercial Services Incorporated ("Network"), as assignee of Stewart Title Guaranty Company ("Stewart Title"), as subrogee Anderson, filed a complaint against Plaintiff in the State Court of Fulton County (the "Network Action"). Plaintiff's Statement of Undisputed Material Facts [2] (Dkt. No. 70) ("SUMF") ¶ 1; Defendant's Response to Plaintiff's Statement of Undisputed Material Facts and Statement of Additional Facts (Dkt. No. 72) ("Response to SUMF") ¶1.   Attorney Richard M. Howe of Howe Law Firm, P.C. signed and filed the complaint in the Network Action.   SUMF ¶ 1; Response to SUMF ¶ 1.   The Network Action asserted that the debt owed arose from a false swearing and misrepresentations by Plaintiff in his "Sellers Affidavit" and "Warranty Deed" in connection with his sale of real property to Anderson.   SUMF ¶ 1; Response to SUMF ¶ 1.   Network sought damages of $191,000 plus $102,344.60 in interest and $44,000.01 in attorney's fees.   SUMF ¶ 1; Response to SUMF ¶ 1.

---

[2]   Plaintiff filed a "separate and concise statement of the material facts, numbered separately, as to which the movant contends no genuine issue exists to be tried," as required by BLR 7056-1.   Defendant has responded and, where appropriate, has "specifically controverted" certain of those facts.   Accordingly, the Court has determined which facts have not been deemed admitted.   *See* BLR 7056-1(a).   In all instances, the Court has viewed "the evidence and factual inferences in the light most favorable to [Defendant], as required on a motion for summary judgment." *Parton v. United Parcel Serv.*, 2005 WL 8154268, at *2 (N.D. Ga. Aug. 2, 2005).

4

In his amended answer, filed on November 27, 2014, Plaintiff moved for dismissal and for summary judgment on the basis of "the existence of the chapter 7 discharge." SUMF ¶ 5; Response to SUMF ¶ 5.   Plaintiff also filed a motion to dismiss the Network Action on December 11, 2013, on the basis that Network lacked standing to bring the claims.   SUMF ¶ 6; Response to SUMF ¶ 6.   In January 2015, the Network Action was dismissed without prejudice for failure to prosecute.   SUMF ¶ 8; Response to SUMF ¶ 8.

After the dismissal of the Network Action, Plaintiff filed a complaint against Network and Defendant in the District Court for the Northern District of Georgia (Case No. 15-cv-00827-SCJ) (the "Federal Action").   SUMF, ¶ 9; Response to SUMF, ¶ 9.   In the Federal Action, Plaintiff sued Defendant for violations of the FDCPA and alleged the existence of a Chapter 7 bankruptcy discharge.   SUMF, ¶ 9; Response to SUMF, ¶ 9.

On April 3, 2015, Defendant refiled in the State Court of Fulton County a complaint against Plaintiff on Network's behalf that was "closely similar" to the complaint previously dismissed for failure to prosecute (the "Second Network Action").   SUMF, ¶ 10; Response to SUMF, ¶ 10.   Defendant voluntarily dismissed the Second Network Action in November 2015, prior to a scheduled trial.   SUMF, ¶ 11; Response to SUMF, ¶ 11.

In April 2015, Plaintiff filed a motion to reopen his bankruptcy case for the purpose of filing suit against Network.   *See* Case Number 09-65367-LRC, Dkt. No. 32.   Plaintiff initiated this adversary proceeding on July 23, 2015, by filing a complaint against Network,

5

to which Defendant was later added by amendment.[3]  *Id.*, Dkt. Nos. 1, 16.  Plaintiff dismissed voluntarily his claims against Network on December 16, 2015.  *Id.*, Dkt. No. 20.

The Court takes judicial notice of the fact that Plaintiff's Schedule F did not list a debt owed to Anderson, Stewart Title, or Network and that Plaintiff's attached creditors' list did not include the names and addresses of Anderson, Stewart Title, Network, or HLF. *See* Case Number 09-65367-LRC, Dkt. No. 1.  The Court takes further judicial notice of the fact that the Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors, & Deadlines mailed to scheduled creditors in Plaintiff's bankruptcy case was not mailed to Anderson, Stewart Title, Network, or HLF.  *See id.*, Dkt. No. 7.

While Defendant does not dispute the facts above, Defendant's Response to Plaintiff's Statement of Undisputed Facts in Support of Plaintiff's Motion for Partial Summary Judgment and Statement of Additional Facts ("Defendant's SUMF") includes additional facts, which Defendant asserts are "material to the Court's consideration" of the Motion.  Defendant's SUMF, ¶ II.  Plaintiff objects to the Court's consideration of these additional facts as being supported only by "inadmissible hearsay."

The Court finds the following additional facts to be relevant to this matter and that Defendant has properly relied upon the affidavits of Kim Anderson and Felicia E.

---

[3] "The court recognizes that pursuant to Federal Rule of Bankruptcy Procedure 9020 and 9014, the traditional way to bring an action for contempt is by motion. However, because an adversary proceeding provides a defendant with more, not less procedural protection than in a Rule 9014 contested matter brought by motion, "courts routinely hear contempt actions brought as adversary proceedings." *In re Bennett*, 2015 WL 8147588, at *2 (Bankr. N.D. Ohio Dec. 7, 2015); *see also In re Henriquez*, 536 B.R. 341, 343 n.2 (Bankr. N.D. Ga. 2015).

Saintil-Deltis for the purpose of demonstrating the existence of a genuine issue of material fact in defense of the Motion.[4]   Plaintiff applied for and obtained a HELOC from Washington Mutual, which was secured by the Property.   Affidavit of Felicia E. Saintil-Deltis, ¶ 2.   The security deed for the HELOC was never cancelled or marked paid in the land records of Cobb County, Georgia.   Id. ¶ 9.   After August 30, 2005, Plaintiff continued to borrow on the HELOC and ultimately defaulted under the terms of the HELCO and failed to make payments, leaving, as of March 16, 2010, an unpaid principal balance of $296,226.37.   *Id*. ¶¶ 10, 13.   Prior to June 2010, Anderson had no notice of knowledge of Plaintiff's bankruptcy filing.   Affidavit of Kim Anderson, ¶ 2.

### CONCLUSIONS OF LAW

Plaintiff seeks partial summary judgment as to Defendant's liability for violations of the discharge injunction, violations of the FDCPA, and negligence.[5]   Having reviewed the Motion, the Court concludes that material facts remain in dispute as to whether the debt at issue was discharged and, therefore, the Court cannot conclude that Defendant's filing of

---

[4] Plaintiff has objected to Defendant's reliance on legal briefs filed by Anderson in the Bankruptcy Case as not constituting evidence or a judicial admission.   The Court agrees that facts asserted in a brief are not evidence and has not considered such facts.   The Court will consider only the two affidavits incorporated by reference in Defendant's SUMF.   Although the best practice would have been for Defendant to attach copies of the affidavits as exhibits to Defendant's SUMF, the affidavits are filed in Plaintiff's related bankruptcy case and are easily accessible to the Court and Plaintiff, such that neither the Court nor Plaintiff has been prejudiced.   Given their incorporation by reference, the Court finds that the affidavits are "filed in the record" within the meaning of Rule 56(c).   Further, the Anderson and Saintil-Deltis affidavits appear to be based upon the personal knowledge of the affiants, and the information contained therein is either not hearsay or admissible under an exception to the hearsay rule.

[5] Plaintiff seeks damages only with regard to Defendant's participation in the filing of the Second Network Action. *See* Third Amended Complaint, n.2 (Dkt. No. 57).

7

the Second Network Action violated the discharge injunction.

A.   *Summary Judgment Standard*

In accordance with Federal Rule of Civil Procedure 56 (applicable to bankruptcy proceedings under Rule 7056 of the Federal Rules of Bankruptcy Procedure), the Court will grant summary judgment only if "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law."   FED. R. CIV. P. 56(c); *see also Hairston v. Gainesville Sun Publ'shg Co.*, 9 F.3d 913, 918-19 (11th Cir. 1993).   A fact is material if it might affect the outcome of a proceeding under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).   A dispute of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.   The moving party has the burden of establishing the right of summary judgment. *Clark v. Coats & Clark, Inc*., 929 F.2d 604, 608 (11th Cir. 1991); *Clark v. Union Mut. Life Ins. Co*., 692 F2d 1370, 1372 (11th Cir. 1982).

To determine whether a genuine issue of material fact exists, the Court must view the evidence in the light most favorable to the nonmoving party.   *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Rosen v. Biscayne Yacht & Country Club, Inc.*, 766 F.2d 482, 484 (11th Cir. 1985).   The moving party must identify those evidentiary materials listed in Rule 56(c) that establish the absence of a genuine issue of material fact.   *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986); *see also* FED. R. CIV. P. 56(e).

B.    *Violations of the Discharge Injunction*

"Section 524 of the bankruptcy code provides the debtor with a post-discharge injunction against collection of debts discharged in bankruptcy," —a "barrier that prevents creditors from reaching the debtors' wages, property or assets." *In re Hardy*, 97 F.3d 1384, 1388–89 (11th Cir. 1996) (quoting § 524(a)(2), which states that the discharge "[o]perates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived").   Section 105(a) of the Bankruptcy Code "grants statutory contempt powers in the bankruptcy context," which permit bankruptcy courts to award "monetary and other forms of relief" for violations of the discharge injunction.   *Id.; see also In re Hardy*, 97 F.3d 1384, 1389–90 (11th Cir. 1996).   Under § 105(a), the Court may award "civil contempt sanctions" that are intended to "compensate the complainant for losses and expenses it incurred because of the contemptuous act" or to "coerce the contemnor into complying with the court order." *Jove Eng'g, Inc. v. I.R.S.*, 92 F.3d 1539, 1557 (11th Cir. 1996);[6] *see also In re Henriquez*, 536 B.R. 341, 345 (Bankr. N.D. Ga. 2015) (Sacca, J.); *In re Haemmerle*, 529 B.R. 17, 26 (Bankr. E.D.N.Y. 2015) ("Sanctions for civil contempt may be imposed both to 'coerce future compliance' with a court order issued for another party's benefit and to 'compensate

---

[6] Here, Defendant ceased pursuit of the lawsuit against Plaintiff long ago and, thus, sanctions to coerce Defendant into complying with the discharge injunction are not warranted or available.

9

for any harm that previously resulted" from the noncompliance.'").

"A willful violation occurs when the defendant: (1) knew that the discharge injunction was in place, and (2) intended the action that violated the discharge injunction." *Henriquez*, 536 B.R. at 345; *see also In re Mele*, 486 B.R. 546, 555 (Bankr. N.D. Ga. 2013). "The plaintiff has the burden of proving by clear and convincing evidence that the discharge injunction was violated." *Henriquez*, 536 B.R. at 345. "A creditor's subjective belief or intent is irrelevant," such that a showing that the creditor received notice of a debtor's discharge "is sufficient to establish the knowledge element of the Eleventh Circuit's two-part test." *In re Beback*, 2013 WL 5156706, at *2 (Bankr. M.D. Fla. Sept. 12, 2013).

That being said, "[t]o reach the issues of whether . . . contempt is appropriate, the Court must first determine whether any debts that the Debtor purportedly owes to [Network] were discharged in his bankruptcy case." *In re Hardej*, 563 B.R. 855, 862–63 (Bankr. N.D. Ill. 2017).[7]  When the discharge exception provided by § 523(a)(3) is at

---

[7] There is a split of authority as to which party bears the burden of proof on a motion for contempt of the discharge injunction when the issue turns on whether or not the debt has been discharged.  *Compare In re Azevedo*, 506 B.R. 277 (Bankr. E.D. Cal. 2014) ("In the case of an unscheduled creditor in a no-asset, no-bar-date Chapter 7," the burden should be placed "on the debtor to show that none of the exceptions to discharge under § 523(a)(2), (4), and (6) apply to the debt by operation of § 523(a)(3)(B)."), *with In re Ziv*, 2014 WL 5426729, at *8 (Bankr. C.D. Cal. Oct. 23, 2014) (rejecting the holding of *Azevedo* because it essentially places a burden on the debtor to show by clear and convincing evidence that a debt is not of the kind specified in § 523(a)(2), (4), or (6), when ordinarily, the creditor would have the burden of proof and the standard would be the lower preponderance of the evidence standard).  Having considered the question, the Court agrees with *In re Zin* that it is inappropriate to require the debtor to prove by clear and convincing evidence a negative—that she did not incur a debt through fraud, willful and malicious injury, *etc.*  Accordingly, the Court will not place the burden on the Plaintiff to show by clear and convincing evidence that the exception to

10

issue, the creditor bears the burden of establishing that the omitted debt is of the kind
specified in § 523(a)(2), (4), or (6). *In re Jones,* 296 B.R. 447, 451 (Bankr. M.D. Tenn.
2003); *but see In re Wier*, 2012 WL 5334765, at *2 (Bankr. N.D. Ga. Oct. 1, 2012)
(Murphy, J.) ("Under none of these three options is the creditor required to prove the merits
of a claim under § 523(a)(2), (4) or (6); instead the creditor must prove only a colorable or
viable claim under one of those subsections.").[8]  Specifically, the omitted "creditor must
not only prove that the debt owed to him was not included in the debtor's bankruptcy
schedules such that he had no formal notice of the debtor's bankruptcy in time to file a
dischargeability complaint but also must prove the merits of his claim under § 523(a)(2),
(4) or (6)," and then the burden shifts to "debtor to show that the creditor had 'notice or
actual knowledge' in time to file a dischargeability complaint." *In re Asbury*, 2014 WL
1323216, at *7 (Bankr. N.D. Ohio Mar. 31, 2014).

---

discharge provided by § 523(a)(3) does not apply.

[8]  The Court recognizes a split of authority on the burden of proof regarding §523(a)(3).   However, the Court agrees
with the reasoning of *In re Jones* that "[r]eading § 523(a)(3)(B) to include a requirement that the creditor prove the
merits of the incorporated § 523(a)(2), (4) or (6) action simply states the obvious policy choice already made by
Congress with respect to debtors who fail to list creditors: the short time periods and exclusive jurisdiction that a
scheduled defrauded creditor faces under § 523(c) and Bankruptcy Rule 4007(c) are forfeited when the debtor fails to
schedule a claim that would be nondischargeable under § 523(a)(2), (4) or (6)."   Allowing an omitted creditor to
establish nondischargeability under § 523(a)(3)(B) by showing a colorable claim "reads into § 523(a)(3)(B)
congressional intent to bar the discharge of an inadvertently omitted debt—an outcome difficult to square with the
robust policy of fresh start for the honest but unfortunate debtor." *Id.*   Therefore, an omitted "creditor must not only
prove that the debt owed to him was not included in the debtor's bankruptcy schedules such that he had no formal
notice of the debtor's bankruptcy in time to file a dischargeability complaint but also must prove the merits of his claim
under § 523(a)(2), (4) or (6)," and then the burden shifts to "debtor to show that the creditor had 'notice or actual
knowledge' in time to file a dischargeability complaint."   In re Asbury, 2014 WL 1323216, at *7 (Bankr. N.D. Ohio
Mar. 31, 2014).

A party seeking summary judgment cannot show "that he is entitled to judgment as a matter of law" without establishing "by record evidence that there are no genuine disputes of material fact and that he is entitled to judgment as a matter of law." *In re Russo*, 494 B.R. 562, 566 (Bankr. M.D. Fla. 2013). "Because an affirmative defense can preclude judgment from being entered in [Plaintiff's] favor, part of [Plaintiff's] burden as the [moving] party is to establish that [Defendant's] affirmative defenses are invalid or legally insufficient." *Id.* (citing *In re Camtech Precision Mfg., Inc.*, 471 B.R. 293 (S.D. Fla. 2012) ("As the moving party, in order for the Committee to prevail on summary judgment, it must come forward with evidence to defeat or overcome Regions' affirmative defense. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991)."); *see also In re Int'l Mgmt. Assocs., LLC*, 2016 WL 552491, at *11 (Bankr. N.D. Ga. Feb. 10, 2016) (Bonapfel, J.) ("The Trustee seeks summary judgment that Crown cannot prevail on its affirmative defense that it took the transfer for value and in good faith. Although Crown carries the burden of establishing an affirmative defense, because the Trustee is the party moving for summary judgment he must establish that there is no genuine dispute as to any fact such that Crown cannot prevail. For summary judgment purposes, it is the Trustee who must establish that Crown did not take the transfer for value and in good faith."); *In re Express Factors, Inc.*, 2005 WL 6486099, at *5 (Bankr. N.D. Ga. Sept. 30, 2005) (Diehl, J.) ("With respect to Plaintiff's Motion for Summary Judgment, the burden is on Plaintiff to show that

the undisputed facts in the record preclude the ordinary course of business defense as to the transfers between Debtor and Defendant.")

Here, Plaintiff alleges that Defendant violated the discharge injunction by collecting a debt owed to Network.   According to Network's complaint filed in the Network Action, the debt arose due to Plaintiff's false swearing and misrepresentations in his "Sellers Affidavit" and "Warranty Deed" in connection with his sale of real property to Anderson and a payment to Anderson by Network's assignor, Stewart Title.   In its defense, Defendant asserts that the debt was not discharged, either because it arose post-petition or, alternatively, if it did arise pre-petition, because it is excepted from discharge under § 523(a)(3)(B).

As a threshold matter, Plaintiff asserts that Network "was never an actual creditor [of Plaintiff] and was owed nothing in light of Anderson's continued possession of title and right to press her claims."   Plaintiff, therefore, argues that Network has no standing to assert that the debt was not discharged.   While that might be the case if Defendant were the creditor seeking a determination of nondischargeability in order to *collect* the debt, Defendant has never asserted an ownership interest in the debt and relies on the determination of nondischargeability solely to defend itself against liability for violating the discharge injunction.   Standing "'is a jurisdictional prerequisite to suit in federal court.'" *Chen v. Siemens Energy Inc.,* 467 F. App'x 852, 853 (11th Cir. 2012) (citation omitted).

13

"To satisfy constitutional requirements, three factors must be present: (1) the party asserting standing must have suffered actual injury or been threatened with injury, (2) the injury must be traceable to the objectionable conduct, and (3) the relief requested must be likely to redress the injury." *Id*. (citing *E.F. Hutton & Co., Inc. v. Hadley*, 901 F.2d 979 (11th Cir. 1990)).   It is not clear to the Court that the Article III standing requirements apply to a named defendant in an adversary proceeding, as "the Supreme Court has clearly articulated that no constitutional standing issue arises when, as here, a litigant attempts to assert the rights of a third party defensively."   *In re 1031 Tax Group, LLC,* 439 B.R. 47, 60 (Bankr. S.D.N.Y. 2010) (citing *Warth v. Seldin*, 422 U.S. 490, 500 n.12 (1975)).

In any event, even if prudential considerations would prevent Defendant from raising the rights of another, the Court rejects Plaintiff's argument that Network did not become a creditor holding a debt against Plaintiff when it took an assignment from Stewart Title.   Plaintiff argues that Network did not receive the right to sue Plaintiff when it took the assignment of Stewart Title's subrogation claim because Stewart Title, and therefore Network, would have been required to sue Plaintiff in Anderson's name, rather than in its own name.   Even assuming that is the law, the fact that Network did not do so when it filed the State Court Action does not establish that Network had no right to do so.   Plaintiff appears to have conceded that Stewart Title assigned whatever debt it had against Plaintiff to Network.   For purposes of the discharge injunction violation before this Court, the only

14

relevant question is whether that debt, whatever it was and to whomever it was owed, was subject to the discharge injunction.   To make that determination, the Court need not determine that Network successfully collected the debt or speculate whether it would have renewed its efforts.   Rather, the Court need only determine that any debt that Defendant attempted to collect was a prepetition debt that was not of the kind listed in § 523(a)(2), (4), or (6).

In that regard, Plaintiff asserts that the debt Defendant attempted to collect is a prepetition debt because Anderson's claim for breach of warranty of title arose when Plaintiff executed the warranty deed.   Defendant asserts that no claim arose until such time as Plaintiff borrowed additional money on the HELOC and Plaintiff's lender notified Anderson that it was going to foreclose on the Property.

In a Chapter 7 case, only debts that arose prior to the date of the order for relief—the date of the commencement of the bankruptcy case—are discharged.  *See* 11 U.S.C. § 727(b); § 301(b).  "Debt" is defined in § 101(12) as "liability on a claim," and "claim" is defined in § 101(5) as "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed,

15

undisputed, secured, or unsecured.   Whether a debt arose prior to the commencement of the case is a question of federal, bankruptcy law.   *See Epstein v. Official Committee of Unsecured Creditors*, 58 F.3d 1573 (11th Cir. 1995); *see also In re Bennett*, 2015 WL 8147588, at *4 (Bankr. N.D. Ohio Dec. 7, 2015) ("Courts agree that while state law may determine the existence of a cause of action, 'federal law determines when a claim arises for bankruptcy purposes.'").

In the Eleventh Circuit, courts apply the "*Piper* test" to determine whether a creditor holds a "claim" against the bankruptcy estate.   *Epstein,* 58 F.3d at 1577; *In re Krause, Inc.*, 2005 WL 6487214, at *12 (Bankr. N.D. Ga. July 11, 2005) (Massey, J.) ("Any claim that Home Depot holds for breach of an implied warranty of merchantability arose at the time of sale.").   Under this test, a "claim" does not arise prepetition unless events occur prepetition that "create a relationship, such as contact, exposure, impact, or privity, between the claimant and the [debtor]; and (ii) the basis for liability is the debtor's prepetition conduct." *Id*.   Application of the *Piper* test protects a claimant's due process rights because the requirement of a prepetition relationship ensures that the debtor and the claimant will have some basis of being able to identify the existence of contingent and unmatured claims.   *See In re United States Pipe & Foundry Co.*, 577 B.R. 916, 924 (Bankr. M.D. Fla. 2017). "[F]or federal bankruptcy purposes, a pre-petition claim may encompass a cause of action that, under the state law, is not cognizable until after the petition is filed."   *In re Pan Am.*

16

*Hosp. Corp.*, 364 B.R. 839, 847 n.6 (Bankr. S.D. Fla. 2007); *In re Wilbur*, 237 B.R. 203, 209 (Bankr. M.D. Fla. 1999) ("[U]nder federal law, an indemnity agreement creates a contingent claim as of the date of the agreement.").

The undisputed facts demonstrate that a relationship existed between Plaintiff and Anderson prepetition, in that Plaintiff executed the warranty deed in 2005, well before the Petition Date, and that Plaintiff engaged in the conduct necessary to create a claim. Plaintiff executed the warranty deed in 2005. To the extent that the warranty of title was false, it was false at the time it was given because the encumbrance that Anderson complained of as breaching the warranty of title was not marked satisfied and remained on the Property, subject to future advances being taken by Plaintiff. *Teems v. City of Forest Park*, 137 Ga. App. 733, 733, 225 S.E.2d 87, 88 (1976) ("A breach of a covenant of warranty, if breached at all, is at least technically breached when the covenant is entered into and the damages are therefore to be assessed in accordance with the conditions as they existed at that time."). While it is true that Anderson may not have been able to sue Plaintiff for breach of warranty of title under state law until she could show that she had satisfied the encumbrance, *see Hitchcock v. Tollison*, 213 Ga. App. 477, 480, 444 S.E.2d 844, 846 (1994); O.C.G.A. § 44–5–64, Anderson had a contingent and unmatured claim for breach of warranty of title, which is a "claim" within the meaning of § 101(5). Accordingly, to the extent that the debt held by Network originated as Anderson's claim

against Plaintiff for breach of warranty of title, the debt arose prepetition and was subject to Plaintiff's discharge unless one of the exceptions to discharge applied.

As to this, Plaintiff argues, and the Court agrees, that the debt cannot be of the kind specified under § 523(a)(2) because the undisputed facts demonstrate that any claim held by Network against Plaintiff for fraud was not originally owed to Network, and Georgia law does not permit the assignment of fraud claims.   *See* O.C.G.A. § 44-12-24; *see also In re Pittard*, 358 B.R. 457, 459 (Bankr. N.D. Ga. 2006) (Bihary, J.); *In re Johnston*, 2007 WL 7141849, at *3 (Bankr. N.D. Ga. May 25, 2007) (Bonapfel, J.) ("The fact that an obligor on a note may be liable to the original holder in fraud as well as in contract, however, does not permit the assignee to enforce the fraud claim under Georgia law."); *In re Robertson*, 576 B.R. 684, 715 (Bankr. N.D. Ga. 2017) (Hagenau, J.) (denying summary judgment to creditor who had not demonstrated "its ability to bring [a fraud] claim, as Georgia law generally does not permit an assignee to bring a claim for fraud on its assignor").

This conclusion leaves the possibility that Defendant may be able to defend itself against Plaintiff's claim by showing that the debt at issue is of the kind specified in § 523(a)(6) and, therefore, was nondischargeable under § 523(a)(3)(B).   The undisputed facts show that Plaintiff filed a Chapter 7 bankruptcy case and did not schedule or otherwise list a debt to Anderson; that the deadline for filing a complaint to determine the dischargeability of a particular debt in Plaintiff's case was June 12, 2009; and that prior to

18

June 2010, Anderson had no notice of knowledge of Plaintiff's bankruptcy filing. In opposition to Plaintiff's motion for summary judgment, Defendant has pointed to evidence to raise questions of fact as to whether Plaintiff borrowed money on a HELOC, knowing the resulting debt would be secured by property he had sold to Anderson and failed to make payments on the debt, causing it to go into default. None of the facts stated in Plaintiff's statement of undisputed facts rebut the possibility that Plaintiff incurred a debt "for willful and malicious injury" to Anderson or her property. This determination requires a highly factual analysis, and factual disputes exist on matters including, but not limited to, Plaintiff's intent when continuing to borrow funds on the HELOC and his understanding of the impact of his continued use of the HELOC on the Property. Based on these factual issues, the Court cannot conclude that Plaintiff is entitled to summary judgment that Defendant violated the discharge injunction.

C.    *FDCPA and Negligence Claims*

The Court has not determined whether it has subject matter jurisdiction over Plaintiff's claims for violations of the FDCPA and negligence. This Court's subject matter jurisdiction is limited to "any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11." 28 U.S.C. § 157(a); 28 U.S.C. § 1334(b). A proceeding "arising under" title 11 involves a substantive right created by the Bankruptcy Code. *See In re Toledo*, 170 F.3d 1340, 1344–1345 (11th Cir.

19

1999).   A proceeding "arising in" title 11 typically includes administrative matters that can only arise in a bankruptcy case.   *Id*.   Such matters constitute "core" proceedings.   *Miller v. Kemira, Inc. (In re Lemco Gypsum, Inc.)*, 910 F.2d 784, 787 (11th Cir. 1990).   The Court may also hear and decide "noncore" matters that are "related to" the bankruptcy proceeding, but may only submit proposed findings of fact and conclusions of law to the districts court in such matters.   *See* 28 U.S.C. § 157(c)(1).

In this case, Plaintiff is a debtor in a Chapter 7 case, and the acts complained of occurred post-petition.   Accordingly, the FDCPA and negligence claims are not property of the estate, see 11 U.S.C. § 541, and cannot impact Plaintiff's bankruptcy estate or creditors.   Accordingly, it is clear that the Court lacks "related to" jurisdiction over these claims.   *In re Vienneau*, 410 B.R. 329, 334 (Bankr. D. Mass. 2009); *In re Wynne*, 422 B.R. 763, 772 (Bankr. M.D. Fla. 2010) ("Because the outcome of the proceeding will not have any effect on the estate being administered in bankruptcy, the Debtors' FDCPA and state law claims are not "related to" the bankruptcy case within the meaning of 28 U.S.C. § 1334(b), and this Court lacks subject matter jurisdiction over the claims. . . ."); *In re Harlan*, 402 B.R. 703, 713 (Bankr. W.D. Va. 2009) (holding a lack of subject matter jurisdiction because "Debtors' recovery from any violation of the FDCPA will have no effect on . . . their bankruptcy estate").

There is a split of authority as to whether the bankruptcy court may exercise

ancillary (or supplemental) jurisdiction over claims that would not otherwise meet the
"related to" jurisdiction test.  *Compare In re Hosp. Ventures/LaVista*, 358 B.R. 462, 474
(Bankr. N.D. Ga. 2007), *aff'd per curiam*, 265 F. App'x 779 (11th Cir. 2008) (holding that,
where a "core-related supplemental claim" exists, 28 U.S.C. § 1367(a) allows the district
court, under 28 U.S.C. § 157(a) and LR 83.7, ND Ga., to refer a claim to the Bankruptcy
Court for determination, and defining a "core-related supplemental claim" as one "with
three attributes . . . : (1) It does not meet the usual 'conceivable effect' test and, therefore,
lacks an independent basis for jurisdiction under § 1334(b); (2) It is asserted in a
proceeding in which the primary claim arises under the Bankruptcy Code such that the
original proceeding is 'core'; and (3) It has a nexus with the primary claim that is sufficient
to bring the claim within a district court's § 1334(b) jurisdiction as supplemented by §
1367."), *with In re Harlan*, 402 B.R. 703, 713 (Bankr. W.D. Va. 2009) ("Therefore, this
Court cannot exercise supplemental jurisdiction over the Debtors' otherwise unrelated
FDCPA claims on the sole grounds that it shares a common factual background the
Debtors' claim under section 524 of the Bankruptcy Code."), *In re Conseco, Inc.*, 305 B.R.
281 (Bankr. N.D. Ill. 2004) (finding that bankruptcy court lacked authority to exercise
ancillary jurisdiction), and *In re Davis*, 216 B.R. 898, 902 (Bankr. N.D. Ga. 1997) (Massey,
J.) ("Nor does 28 U.S.C. § 1367 supply a basis for the exercise of jurisdiction by a
bankruptcy court in non-core cases, even with consent.").

21

The Court has not yet considered or decided whether it has the authority to exercise supplemental jurisdiction, and the parties have not had an opportunity to brief the issue or argue that the claims in this case are not "core-related supplemental claims."  Further, "[e]ven where a court has the power to employ supplemental jurisdiction, it is within the court's discretion to decline to do so in appropriate circumstances," *In re Marshall*, 491 B.R. 217, 232–33 (Bankr. S.D. Ohio 2012), and the parties have not addressed whether the Court, assuming it has supplemental jurisdiction, should exercise it.   For these reasons, the Court will defer consideration of the motion for summary judgment as it pertains to the FDCPA and negligence claims to allow the parties an opportunity to brief these issues.

### CONCLUSION

For the reasons stated above, the Court concludes that Plaintiff is not entitled to summary judgment as to Defendant's liability for violations of the discharge injunction and that the Court should defer any consideration of the Motion as it pertains to the FDCPA and negligence claims.   Accordingly,

IT IS ORDERED that the Motion is **DENIED** in part, with a ruling on the remaining portion of the Motion being deferred pending further briefing on the issue of subject matter jurisdiction.

### END OF DOCUMENT

**Distribution List**

**Gregory Daniels**
1860 Perry Blvd
Atlanta, GA 30318

**Jeffrey Roger Nickerson**
Howe & Associates
Suite 100
4385 Kimball Bridge Road
Alpharetta, GA 30022